IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 13, 2005

## STATE OF TENNESSEE v. CHARLES EDWARD GREER

**Direct Appeal from the Circuit Court for Madison County**
**No. 04-70     Roy B. Morgan, Jr., Judge**

————————

**No. W2004-02724-CCA-R3-CD  - Filed December 2, 2005**

————————

The defendant, Charles Edward Greer, was convicted of three counts of sale of more than 0.5 grams of cocaine and three counts of delivery of more than 0.5 grams of cocaine, all Class B felonies.  The trial court merged the three convictions for delivery of cocaine into the accompanying convictions for the sale of cocaine and imposed concurrent, Range I sentences of eight years on each.  In this appeal as of right, the defendant challenges the sufficiency of the evidence.  The judgments are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Benjamin C. Mayo, Jackson, Tennessee, for the appellant, Charles Edward Greer.

Paul G. Summers, Attorney General & Reporter; Brian C. Johnson, Assistant Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Officer Robert Wesley Stilwell, an investigator with the Jackson Police Department Metro Narcotics Unit, employed the services of Lisa Gail Morris, a confidential informant, to assist in an investigation involving illegal drug sales.  On February 18, 19, and 22, 2003, Ms. Morris, while acting under the supervision of Officer Stilwell, made three separate purchases of crack cocaine from the defendant.

Ms. Morris testified that on February 18, 2003, after being supplied with $160, she purchased .6 grams of crack cocaine from the defendant.  She stated that on the second occasion, she purchased 1.3 grams of cocaine for the same amount of money.  After again being supplied with $160, she received .7 grams of cocaine in her third purchase.  According to Ms. Morris, each of the transactions took place in her car while she was parked in front of the residence of the defendant's mother at 169

Holland Street in Jackson. Special Agent Dana Rose of the Tennessee Bureau of Investigation confirmed that the substance purchased by Ms. Morris was crack cocaine and testified as to the weight of the illegal drug in each of the three transactions.

Officer Stilwell testified that a month or two before the transactions took place, Ms. Morris asked to be employed as a confidential informant. According to the officer, she admitted prior illegal drug use and explained that she had discontinued her habit and had grown tired of her husband's continued usage. The officer recalled that Ms. Morris stated that she knew where her husband was getting the illegal drugs and wanted to help "put a stop to it."

The officer testified that he searched Ms. Morris and her vehicle prior to each illegal drug purchase. He stated that he followed Ms. Morris in his vehicle and parked in a nearby parking lot to monitor each transaction. The officer did not offer the audiotape as evidence at trial, explaining that the quality was "extremely low" and that the content of the conversations was inaudible. Officer Stilwell testified that although he could not see any of the transactions, he could hear the voices of Ms. Morris and a male. The officer stated that he followed Ms. Morris's vehicle as soon as the transaction was complete until he arrived at their meeting place where she provided him on each occasion with an "off-white, . . . rock-like substance." Officer Stilwell recalled that after each transaction, he again searched Ms. Morris and her vehicle.

Officer Stilwell acknowledged that he paid Ms. Morris $60 for her services in the first transaction and $40 in the second. The officer also conceded that the original target of the investigation was the defendant's brother, Mitch Greer, who did not participate in any of the three transactions. He recalled that Ms. Morris had provided him with a pager number and that when he was unable to find the defendant at his mother's residence, he telephoned the pager number and received a return call from a person who identified himself as "Charles." Officer Stilwell explained that he identified himself and then informed the caller that he needed to talk to Charles Greer because of an indictment. According to the officer, the defendant hung up and did not contact him immediately afterwards but did surrender himself at the county jail a week or so later. He also testified that Ms. Morris supplied him with a residential telephone number and that he was able to verify that the address of the number was 169 Holland Street. The officer confirmed that Ms. Morris was able to identify the defendant from a photographic lineup as the person who had sold her the crack cocaine.

The defendant did not testify at trial. There was no proof offered by the defense. One week after the guilty verdict, however, the foreperson of the jury wrote a letter to the trial judge, which was made a part of the record. In the letter, the foreperson wrote as follows:

The jury found Mr. Greer guilty on all charges. I was not alone in my feelings in that jury room that this should not have been. I did not believe all of Ms. Morris's testimony. . . . [T]hings became far from pleasant in the jury room. I feel, in short[,] that I was bullied . . . .

In this appeal, the defendant argues that the testimony of the informant, who admitted prior illegal drug use, who had lost custody of her child, and who had become an informant in exchange for pay, was not credible. He contends that because the defendant was not the target of the investigation, because Officer Stilwell did not personally witness each transaction, because the audiotapes were of such poor quality as to be of no use as evidence, and because the crack cocaine was delivered by a third party during the second transaction, the evidence is insufficient to support any of the three convictions. Finally, the defendant argues that the testimony of the informant was not adequately corroborated by other direct evidence.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

A defendant cannot be convicted upon the uncorroborated testimony of accomplices. Sherrill v. State, 321 S.W.2d 811, 814-15 (1959); Prince v. State, 529 S.W.2d 729, 732 (Tenn. Crim. App. 1975). "An accomplice is defined to be a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime." Clapp v. State, 30 S.W. 214, 216 (Tenn. 1894); see also Letner v. State, 512 S.W.2d 643, 647 (Tenn. Crim. App. 1974). A common test is whether the alleged accomplice could have been indicted for the offense. State v. Perkinson, 867 S.W.2d 1, 7 (Tenn. Crim. App. 1992). The rule is that "there should be some fact testified to entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but that the defendant is implicated in it." State v. Fowler, 373 S.W.2d 460, 463 (Tenn. 1963) (citing Clapp, 30 S.W. at 216; Sherrill v. State, 321 S.W.2d 811, 814-15 (1959); Garton v. State, 332 S.W.2d 169, 173 (1960)). This requirement is met if the corroborative evidence fairly and legitimately tends to connect the accused with the commission of the crime charged. Marshall v. State, 497 S.W.2d 761, 765-66 (Tenn. Crim. App. 1973). Only slight circumstances are required to furnish the necessary corroboration. Garton, 332 S.W.2d at 175.

In this instance Ms. Morris did not qualify as an accomplice or one who could have been indicted for the sale or delivery of cocaine. See Brown v. State, 557 S.W.2d 926, 926 (Tenn. Crim. App. 1977) (holding that "a purchaser is not an accomplice of the seller, not being chargeable with the same offense"). Further, because the uncontroverted evidence established that Ms. Morris was a confidential informant cooperating with the police, she did not share a common intent with the

-3-

defendant.  See State v. Steve Edward Houston, No. 01C01-9606-CC-00280, slip op. at 3 (Tenn. Crim. App., at Nashville, June 26, 1997) (holding that a confidential informant is not an accomplice); State v. Preston Bernard Crowder and Cynthia Diane Southall, No. 01C01-9304-CR-00143, slip op. at 5 (Tenn. Crim. App., at Nashville, Mar. 14, 1995) (holding that a confidential informant who was cooperating with the police could not have been operating with a common intent with the principal offender and therefore was not an accomplice).

Ms. Morris testified that she made three purchases from the defendant and had no contact with any individual other than the defendant during the purchases.  It is, of course, the function of the jury to determine the credibility of any witness.  Simply stated, that assessment is the prerogative of the finder of fact and is not subject to our review.  Moreover, Officer Stilwell monitored each of the three purchases, searching Ms. Morris before and after the transactions.  He overheard the conversation between Ms. Morris and the seller of the illegal drugs.  A subsequent investigation by the officer confirmed that the defendant lived at the residence where the transactions took place.  It is, of course, also the function of the jury to determine the sufficiency of the identification of the defendant as the one who committed the crimes.  State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).  That the defendant's brother, Mitch Greer, was the initial target of the investigation was a factor for consideration by the jury but nothing more.

Although argued by the defendant as a part of his challenge to the sufficiency of the evidence, this court will separately address the effect of the letter from the foreperson expressing regret for her vote to convict the defendant on each of the three counts.  Rule 606 of the Tennessee Rules of Evidence provides as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon any juror's mind or emotions as influencing that juror to assent or to dissent from the verdict or indictment or concerning the juror's mental processes, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying  be received for these purposes.

Tenn. R. Evid. 606(b).

Regret demonstrated by a juror a week or more after the trial is not a sufficient basis for the impeachment of a verdict.  In State v. Blackwell, 664 S.W.2d 686, 688-89 (Tenn. 1984), our supreme court specifically approved of Federal Rule of Evidence 606(b), ruling that an inquiry into a jury verdict is not permitted except on the issue of whether extraneous information was considered, whether there were improper outside influences in arriving at the verdict, or whether an antecedent

agreement to be bound by quotient or majority result had been reached. None of these grounds appear in this instance.

Accordingly, the judgment must be affirmed.

_____
GARY R. WADE, PRESIDING JUDGE