133 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL JOSEPH JEFFRIES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68338

FILED

JUL 06 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder. Eighth Judicial District Court, Clark County; J. Charles Thompson, Senior Judge.

*Affirmed.*

Gentile Cristalli Miller Armeni Savarese and Vincent Savarese III, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Binu G. Palal, Deputy District Attorney, Clark County,
for Respondent.

BEFORE DOUGLAS, GIBBONS and PICKERING, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

In this appeal, we consider whether the district court abused its discretion in denying appellant's motion for a mistrial based on

17 - 22230

prosecutorial misconduct and his motion for a new trial based on juror misconduct, and whether the district court abused its discretion in declining to provide the jury with a supplemental clarifying instruction on malice aforethought. We conclude that appellant failed to establish any prejudicial prosecutorial misconduct and that appellant's trial counsel failed to adequately develop the record to assess whether he was prejudiced by juror misconduct. We further conclude that because the instructions on malice given to the jury were correct and appellant failed to indicate what supplemental clarifying instruction the district court should have provided, appellant fails to demonstrate error. Therefore, we affirm the judgment of conviction.

We take this opportunity to provide guidance on two recent cases. First, we provide guidance on the applicability of *Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202 (2016), regarding the district court's duty to instruct the jury not to conduct independent research or investigation. Second, we provide guidance on the scope of *Gonzalez v. State*, 131 Nev., Adv. Op. 99, 366 P.3d 680 (2015), concerning the district court's duty to provide additional instruction when a jury's questions during deliberations suggest confusion or lack of understanding of applicable law.

## *FACTS AND PROCEDURAL HISTORY*

On October 22, 2011, appellant Michael Jeffries invited a few guests to his house in Las Vegas, including his longtime friend, Eric Gore. Jeffries' then live-in girlfriend Mandy and her 13-year-old daughter Brittany were also present at the house that entire evening. Both Jeffries and Gore were intoxicated when Gore became angry with one of the guests. Jeffries took Gore outside in an effort to calm him down. The two

then returned to the house and continued to drink, but Gore was still upset. The other guests left as a result, but Gore refused to leave. An altercation ensued, which prompted Jeffries to retrieve his gun from under the mattress in his bedroom. As Jeffries exited his bedroom, an unarmed Gore approached, and Jeffries fatally shot him once in the heart from a distance of 2 to 3 feet.

The only other eyewitness to the shooting, Brittany, recounted the details of that night in statements to police and testimony at the preliminary hearing. Her statements and testimony discredited the defense theory that Gore ran aggressively toward Jeffries before Jeffries shot him in self-defense. When the State called Brittany as its first witness at trial, she could not remember many of the details she previously recounted. In the State's rebuttal closing argument, the prosecutor suggested that Jeffries might have indirectly influenced Brittany's trial testimony and made statements regarding her credibility. On this basis, Jeffries objected and later moved for a mistrial. The district court denied Jeffries' motion.

During deliberations, the district court received three questions from the jury presented in two notes. The first note indicated that a juror had conducted outside research, which prompted the district court to reinstruct the jury pursuant to both parties' request. The second note inquired about the jury instructions; however, the district court did not provide a supplemental clarifying instruction.

Ultimately, the jury returned a verdict of guilty of second-degree murder. Jeffries filed a motion for a new trial, which the district court denied. The court then sentenced Jeffries to serve a prison term of 10 years to life for the murder and a consecutive prison term of 1-6 years

for the deadly weapon enhancement. Jeffries now appeals from the judgment of conviction.

## DISCUSSION

### Prosecutorial misconduct

Jeffries argues that the district court erred by denying his motion for a mistrial based on prosecutorial misconduct. Jeffries contends that the prosecutor engaged in misconduct by vouching for Brittany and arguing that Jeffries influenced Brittany's testimony at trial. Conversely, the State argues that Jeffries raises his vouching argument for the first time on appeal and that this claim does not constitute reversible plain error. The State further denies that its argument concerning Jeffries' influence on Brittany's trial testimony amounted to prosecutorial misconduct because its rebuttal closing argument was appropriate based on the evidence and a proper response to Jeffries' closing argument. We agree with both of the State's contentions and therefore conclude that the district court did not abuse its discretion by denying the motion for a mistrial.

"A defendant's request for a mistrial may be granted . . . where some prejudice occurs that prevents the defendant from receiving a fair trial." *Rudin v. State*, 120 Nev. 121, 144, 86 P.3d 572, 587 (2004). This court will not disturb a district court's decision to deny a motion for a mistrial "absent a clear showing of abuse." *Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006) (internal quotation marks omitted).

"To determine if prejudicial prosecutorial misconduct occurred, the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." *Butler v. State*, 120 Nev. 879, 896, 102 P.3d 71, 83 (2004)

 

(internal quotation marks omitted). Further, "[a] prosecutor's comments should be considered in context, and a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Leonard v. State*, 117 Nev. 53, 81, 17 P.3d 397, 414 (2001) (internal quotation marks omitted).

Harmless-error review, however, only applies if the error was preserved. *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008). "Generally, to preserve a claim of prosecutorial misconduct, the defendant must object to the misconduct at trial . . . ." *Id.* Failure to preserve the error requires this court to apply plain-error review. *Id.* Under plain-error review, reversal is not required unless the defendant shows that the plain error caused "actual prejudice or a miscarriage of justice." *Id.* (internal quotation marks omitted).

*Whether the State improperly vouched for Brittany*

Jeffries contends that the prosecutor inappropriately vouched for Brittany's credibility during the following part of the rebuttal closing argument:

> So we now have three versions of statements from Brittany . . . . And now we're here at trial, and Brittany . . . doesn't remember anything. You know, . . . *I really grew to like Brittany . . . during this whole period that I've had this case.* You know why? You saw it.

> Here's a wonderful young lady. She's a wonderful young lady. And think about the influences she has had . . . in her life that would influence her testimony. She . . . has influences now that she didn't have then. In 2011, there wasn't this influence that—you know, the [imminent] marriage of her mother to the man that she watched shoot Eric Gore dead.

SUPREME COURT
OF
NEVADA

(O) 1947A

> That's a huge influence. She hasn't had—
> back then, *during her reliable statements that she
> did remember, she didn't have the influence of
> three-and-a-half years of being worked on by mom
> and—perhaps indirectly, but certainly being
> worked on—by Mike Jeffries.*

(Emphases added.) Although Jeffries objected and moved for a mistrial based on the lack of evidence to support the State's argument that Jeffries influenced Brittany's testimony at trial, Jeffries' objection and subsequent motion did not address the alleged improper vouching. Therefore, Jeffries failed to raise the issue of vouching below, and we conclude that he fails to demonstrate that plain error exists to warrant reversal.

*Whether the State inappropriately argued that Jeffries influenced Brittany's testimony*

Jeffries contends that the prosecutor committed misconduct when he suggested that Jeffries influenced Brittany's testimony at trial because the prosecutor's assertion was not supported by the evidence. "A prosecutor may not argue facts or inferences not supported by the evidence." *Williams v. State*, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987). However, "the prosecutor may argue inferences from the evidence and offer conclusions on contested issues." *Miller v. State*, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005) (internal quotation marks omitted). Further, "[e]xplaining to the jury *why* [the witness] might be lying is permissible argument." *Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990).

Here, the prosecutor's argument that Jeffries might have indirectly influenced Brittany's testimony was an appropriate comment on the evidence presented. Brittany testified that she had not been in contact with Jeffries since he shot Gore to ensure that she would be seen as a reliable witness. Brittany also testified that her mother and Jeffries did

not suggest how she should testify at trial. However, testimony also revealed that Brittany's mother and Jeffries became engaged prior to trial, and Brittany admitted that she did not want anything to happen to Jeffries. Based on this testimony, an inference that Brittany's mother and Jeffries indirectly influenced her trial testimony is relevant to explain why Brittany failed to recall many of the details she recounted earlier. Moreover, the prosecutor's rebuttal argument was a proper response to Jeffries' closing argument, which inferred that Brittany's second statement to police was influenced. Accordingly, it was proper for the State to argue that Jeffries could have indirectly influenced her testimony at trial. Because the prosecutor's argument was appropriate, we conclude that the district court did not abuse its discretion by denying Jeffries' motion for a mistrial.

*Juror misconduct*

Jeffries argues that the district court abused its discretion in denying his motion for a new trial based on juror misconduct.[1] In particular, Jeffries argues that the district court had a sua sponte obligation to investigate whether actual prejudice attached as a result of the juror misconduct. We disagree and take this opportunity to provide guidance on *Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202 (2016).

---

[1]Jeffries alternatively argues that counsel was ineffective for failing to challenge the juror misconduct. However, this claim is inappropriately raised for the first time on direct appeal and therefore eludes judicial review. *See Pellegrini v. State*, 117 Nev. 860, 883-84, 34 P.3d 519, 534-35 (2001) (stating that such a claim is appropriately raised for the first time in a post-conviction petition). Further, after consideration of Jeffries' additional arguments concerning juror misconduct, we conclude that they lack merit.

In order for a defendant to prevail on a motion for a new trial based on juror misconduct, "the defendant must present admissible evidence sufficient to establish: (1) the occurrence of juror misconduct, and (2) a showing that the misconduct was prejudicial." *Meyer v. State*, 119 Nev. 554, 563-64, 80 P.3d 447, 455 (2003). With regard to the second prong, "[p]rejudice is shown whenever there is a reasonable probability or likelihood that the juror misconduct affected the verdict." *Id.* at 564, 80 P.3d at 455. In determining whether prejudice resulted, the district court may consider a nonexhaustive list of factors, such as "how the material was introduced to the jury," "the length of time it was discussed by the jury," "the timing of its introduction," and "whether the information was ambiguous." *Id.* at 566, 80 P.3d at 456. Analysis of the impact that the misconduct had on the verdict must be objective with the relevant inquiry being "whether the average, hypothetical juror would be influenced by the juror misconduct." *Id.*

This court will uphold a district court's decision to deny a motion for a new trial based on juror misconduct absent an abuse of discretion. *Id.* at 561, 80 P.3d at 453. Further, this court will not disturb the district court's factual findings absent clear error. *Id.* "However, where the misconduct involves allegations that the jury was exposed to extrinsic evidence in violation of the Confrontation Clause, de novo review of a trial court's conclusions regarding the prejudicial effect of any misconduct is appropriate." *Id.* at 561-62, 80 P.3d at 453.

The juror misconduct at issue here involved independent research, and we recently addressed independent juror investigations in *Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202. In *Bowman*, two jurors conducted individual experiments testing the parties' theories

SUPREME COURT
OF
NEVADA

(O) 1947A

before reentering deliberations. *Id.* at 204. Following the trial, the two jurors revealed that they relied on their experiments in reaching a verdict. *Id.* at 204-05. The defendant moved for a new trial based on this revelation, and the district court subsequently held an evidentiary hearing to investigate the prejudicial effect of the jurors' individual experiments. *Id.* at 205. We ultimately concluded that the district court erred in denying the defendant's motion for a new trial. *Id.* In reaching our conclusion, we determined that prejudicial juror misconduct occurred after applying the *Meyer* factors. *Id.* at 206. We further concluded that the district court had a sua sponte obligation to give a jury instruction prohibiting jurors from conducting independent research, investigations, and experiments. *Id.*

Here, the district court received the following note from the foreperson during jury deliberations: "One Juror openly stated they looked up the consequence of a guilty plea and was against the penalty. What do we do at this time?" Upon both parties' request, the district court provided curative instructions admonishing the jury not to consider punishment. This is evidenced by the fact that Jeffries' counsel stated: "I just wanted the record to reflect that the Court's supplemental charge to the jury was done after consultation with counsel." The district court further confirmed that "it was the request of . . . both sides that [the district court] tell [the jury] not to discuss punishment and go back and consider their verdict."

We take this opportunity to distinguish this case from *Bowman*. Unlike *Bowman*, the district court provided the relevant jury instructions prohibiting jurors from conducting independent research and from considering the penalty. Further, the juror misconduct was revealed before the jury reached a verdict, and thus, the district court was able to

remedy any prejudice by admonishing the jury. Most notably, counsel for both parties agreed upon a curative instruction, which the district court provided. Therefore, the district court was not required to act sua sponte to investigate whether actual prejudice attached as a result of the juror misconduct. It was upon the defense counsel to make such a request. As a result, the brief discussion that ensued concerning the juror note did not reveal enough facts allowing for an objective consideration of the *Meyer* factors. Because Jeffries' trial counsel did not adequately develop the record to assess any prejudice, we conclude that he fails to demonstrate prejudice that would warrant a new trial.

*Supplemental clarifying jury instruction*

Jeffries argues that the district court abused its discretion in refusing to provide a supplemental clarifying instruction to the jury after the court received two jury notes expressing confusion regarding an instruction. We disagree and clarify the scope of *Gonzalez v. State*, 131 Nev., Adv. Op. 99, 366 P.3d 680 (2015).

"The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Id.* (internal quotation marks omitted). This same standard of review applies when the trial judge refuses to answer jury questions during deliberations. *See Tellis v. State*, 84 Nev. 587, 591, 445 P.2d 938, 941 (1968).

In *Tellis*, we stated that "[i]f [the trial judge] is of the opinion the instructions already given are adequate, correctly state the law and fully advise the jury on the procedures they are to follow in their deliberation, his refusal to answer a question already answered in the instructions is not error." *Id.* Subsequently in *Gonzalez*, we determined that *Tellis* did not go far enough in describing the district court's obligation to answer the jury's questions during deliberations. 131 Nev., Adv. Op. 99, 366 P.3d at 683. Thus, we created an exception to the rule as stated in *Tellis* by holding "that in situations where a jury's question during deliberations suggests confusion or lack of understanding of a significant element of the applicable law, the judge has a duty to give additional instructions on the law to adequately clarify the jury's doubt or confusion." *Id.* at 682. This holds true even when the jury is originally given correct, complete, and clear instructions. *See id.* at 684. In *Gonzalez*, the jury presented two questions to the trial judge. *Id.* at 683. Although both parties agreed to an answer addressing both of the jury's questions, the district court refused to answer either of the questions. *Id.* Because the first jury question concerned conspiracy, which went to the very heart of the offense at issue, we held that the district court abused its discretion when it refused to clarify the jury's confusion by providing an answer. *Id.* at 684.

Here, the jury asked the following three questions presented in two notes during deliberations:

> May we have more clarity/explanation on malice aforethought.

> Can we also get further understanding between 2nd degree vs. manslaughter.

> Does a conscious intent to cause death or great
> harm BEFORE committing the crime fall into the
> criteria of malice?

(Emphasis in original.) In response to these juror notes, the district court informed the jury that the instructions in question are statutorily provided. The court clarified that it could only give the jury the law, which the jury must apply to the facts in order to reach a verdict.

The jury's questions suggested confusion concerning malice, which is a significant element of murder.[2] *See* NRS 200.010. Unlike in *Gonzalez*, however, neither Jeffries nor the State proffered any supplemental instructions aimed at answering the jury's questions. Even on appeal, Jeffries does not indicate what further instruction the district court should have provided. We conclude that this distinction is significant and clarify *Gonzalez* to the extent that a district court does not abuse its discretion when it refuses to answer a jury question after giving correct instructions if neither party provides the court with a proffered instruction that would clarify the jury's doubt or confusion. Accordingly, this case would fall outside of the scope of *Gonzalez*, leaving only the

---

[2]It is undisputed that the submitted jury instructions adequately and correctly stated the law.

correct jury instruction on malice to review for error. Therefore, Jeffries fails to demonstrate that the district court abused its discretion.[3]

Having considered Jeffries' arguments and concluded that no relief is warranted, we affirm the judgment of conviction.

_____, J.
Douglas

We concur:

_____, J.
Gibbons

_____, J.
Pickering

_____

[3]Lastly, Jeffries argues that cumulative error warrants reversal. "The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually." *Burnside v. State*, 131 Nev., Adv. Op. 40, 352 P.3d 627, 651 (2015), *cert. denied*, ___ U.S. ___, 136 S. Ct. 1466 (2016) (internal quotation marks omitted). Because there are no errors to cumulate, we conclude that Jeffries is not entitled to relief based upon this claim.